UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                          CHAPTER 11
                                                CASE NO.: 6:15-BK-07275-KSJ
PROGRESSIVE PLUMBING, INC.,

     Debtor.
_____/

KELLOGG & KIMSEY, INC.

     Plaintiff

v.                                              Adv. Case No.: 6:17-AP-00044-KSJ

PROGRESSIVE PLUMBING, INC.,
ALLIED WORLD SPECIALTY
INSURANCE COMPANY,

     Defendant.
_____/

PROGRESSIVE PLUMBING, INC.,

     Counterclaim Plaintiff

v.

KELLOGG & KIMSEY, INC.,

     Counterclaim Defendant.
_____/

PROGRESSIVE PLUMBING, INC.,

     Cross-Claim Plaintiff

v.

ALLIED WORLD SPECIALTY
INSURANCE COMPANY,
     Cross-Claim Defendant
_____/

### DEFENDANT, PROGRESSIVE PLUMBING, INC.'S, ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND CROSSCLAIM

Defendant, Progressive Plumbing, Inc. ("Progressive") hereby files its Answer, Affirmative Defenses, Counterclaim, and Crossclaim to the Complaint filed by the Plaintiff, Kellogg & Kimsey, Inc. ("Plaintiff" or "K&K") (collectively with Progressive, the "Parties"), and responds in like numbered paragraphs, along with its Affirmative Defenses, Counterclaims, and Crossclaim thereto.

1. Admitted for jurisdictional purposes only.

2. Admitted for jurisdictional purposes only.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted for jurisdictional purposes only. Otherwise, denied.

8. Denied.

9. Admitted.

10. Admit that K&K entered into an agreement with Ace to serve as general contractor. Otherwise, without knowledge, and therefore denied.

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

## <u>COUNT I – BREACH OF CONTRACT AGAINST PROGRESSIVE</u>

15.     Progressive realleges and reincorporates its responses to Paragraphs 1 through 14 as if fully set forth herein.

16.     Admit

17.     The Agreement attached to Plaintiff's Complaint speaks for itself. Otherwise, denied.

18.     Denied.

19.     Denied.

20.     Denied.

21.     Denied.

22.     Denied.

23.     Admit only that Progressive did not pay the costs and charges purportedly incurred by ASDT. Denied that Progressive and Allied are responsible for any such costs and charged. Otherwise, denied.

24.     Progressive denies Paragraph 24 in its entirety, including all subparts thereof.

25.     Denied.

26.     Denied.

27.     Denied.

## <u>COUNT II-BREACH OF BOND AGAINST ALLIED AND PROGRESSIVE</u>

28.     Progressive realleges and reincorporates its responses to Paragraphs 1 through 27 as if fully set forth herein.

29.     The Subcontractor Performance Bond speaks for itself. Otherwise, denied.

30.    Denied.

31.    Denied.

32.    Denied.

33.    Denied.

34.    Denied.

35.    Denied.

## FACTUAL ALLEGATIONS COMMON TO
## AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

36.    In 2012, Concord Hospitality, Inc. ("Concord") and Ace Hospitality, Inc. ("Ace") undertook to build a hotel as part of a development known as 1800 West End Hotel & MX Development (the "Project") and required professional services to carry out the work necessary to complete the Project.

37.    To that end, Concord and/or Ace hired K&K to serve as the general contractor for the Project. In furtherance of that agreement, K&K entered into a contract to serve as the general contractor for the Project with Concord and/or Ace (the "Prime Contract"). A true and correct copy of the Prime Contract is attached hereto as **Exhibit "1."**

38.    In turn, K&K and Progressive entered into a contract wherein Progressive agreed to act as a subcontractor on the Project (the "Contract"). Under that agreement, Progressive agreed to provide plumbing services on the Project in exchange for a payment of $1,750,000 (the "Services"). A true and correct of this Contract is attached hereto as **Exhibit "2."**

39.    The Contract between K&K and Progressive called for Progressive to provide "shop drawings, labor, materials, equipment, scaffolding, safety equipment, tools, hoisting, supervision, and fabrication, all applicable licenses, delivery and freight costs, loading, unloading, erection, placement or storage of items provided, and other such accessory items necessary for a

4

complete Plumbing System as noted in the plans, project specifications and contract documents."
Such services enabled K&K to meet its obligations under the Prime Contract.

40.     Per the terms of the project schedule attached to the Contract as Exhibit D (the
"Project Schedule"), Progressive was to commence work on or about January 2013 (the "Schedule
Commencement Date").

41.     Progressive was ready and willing to begin work on the Scheduled Commencement
Date.

42.     Due to K&K's delay in completing the structure of the building, Progressive was
unable to begin its work under the Contract until on or around April 30, 2013 (the "Delayed
Commencement Date").

43.     K&K never adjusted the Project Schedule to account for the delays caused by its
failure to timely complete its work under the Project Schedule.

44.     The Delayed Commencement Date significantly affected Progressive's ability to
remain on schedule under the Project Schedule.

45.     A significate portion of the work to be completed by Progressive, was contingent
upon K&K completing its work on the Project.

46.     In furtherance of the Services to be provided under the Contract, Progressive hired
subcontractors (the "Plumbing Subs").

47.     K&K knew that Progressive hired the Plumbing Subs and that they were under
contract with Progressive.

48.     Specifically, Progressive hired Mazzeo Plumbing, Inc. ("Mazzeo Plumbing") to
perform plumbing work on floors four through nine of the Project. Attached hereto as **Exhibit "3"**
is a copy of the contract between Progressive and Mazzeo Plumbing.

49.     K&K employed Damien Schnapl as their superintendent (the "Superintendent").

50.     During the Project, the Superintendent frequently engaged in activities that created a hostile work environment. By way of example, the Superintendent often berated and insulted workers and physically destroyed and/or damaged finished work.

51.     On one specific occasion, the Superintendent approached John Mazzeo of Mazzeo Plumbing and without provocation or cause proceeded to verbally assault Mazzeo in an extremely aggressive manner. When Mazzeo justifiably defended himself, the Superintendent ordered him and his work crew off the jobsite. Mazzeo Plumbing was ultimately fired by K&K without cause (the "Unjustified Firing").

52.     The Unjustified Firing caused some labor shortages for Progressive. Many of the purported damages alleged in K&K's claims were a direct result of the Unjustified Firing.

53.     Specifically, as a result of the Unjustified Firing:

> a.  Progressive was unable to find a suitable replacement for Mazzeo Plumbing;
>
> b.  K&K hired Trillium Construction ("Trillium") to supplement the work originally to be performed by Mazzeo Plumbing;
>
> c.  Progressive was forced to oversee the temporary and unskilled labor provided by Trillium; and
>
> d.  The hiring of Trillium increased the total labor cost to Progressive.

54.     The project plans, as referenced and incorporated into the Contract (the "Project Plans") contained errors and inaccurate information. By way of example, the Project Plans incorrectly called for Florestone shower pans to be installed in the hotel rooms (the "Shower Pan Error").

55.     The Shower Pan Error resulted in additional costs, time, and man hours that weren't passed onto K&K in the form of a change order.

56.     David Reed, K&K's Project Manager, knew of the Shower Pan Error and that Progressive did not submit a change order for the increased costs it incurred as a result of the error.

57.     During the pendency of its work, Progressive and K&K entered into change orders that resulted in an increase of the contract price of approximately $121,101.85.

58.     Progressive satisfactorily completed all of its work under the Contract. Despite that fact, K&K, having been paid in full by Ace and/or Concord under the Prime Contract, failed to pay $303,087.31 to Progressive for services rendered under the Contract. The pay applications evidencing this unpaid amount are attached hereto as **Exhibit "4."**

59.     Further, K&K, upon information and belief, in bad faith, intentionally withheld approximately $91,078.18 in retainage from Progressive. That amount is included in the entire $303,087.31 amount due to Progressive from K&K.

60.     That retainage, which, under Tennessee law, is to be held in trust for Progressive's benefit, has been wrongly withheld by K&K without a justifiable legal basis.

61.     Progressive has made repeated demands upon K&K for payment. Each of these demands has been ignored by K&K.

62.     The Project was opened on February 9, 2015, and was substantially complete at that time.

63.     Later, on May 5, 2015, pursuant to Tenn. Code Ann. § 66-11-101 et sq., Progressive served Notice of Nonpayment upon K&K and Concord and has yet to receive a response from either entity.  A copy of the Notice of Nonpayment is attached hereto as **Exhibit "5."**

64.     Thereafter, Progressive filed a Notice of Mechanics' and Materialman's Lien on the Property.  The Notice of Lien was recorded on May 18, 2015, in the Register of Deeds Office in Davidson County, Tennessee.  A true and correct copy of this Notice of Lien is attached hereto as **Exhibit "6."**

65.     In response to Progressive's Notice of Lien, K&K filed a Notice of Recording Payment Bond in the Davidson County Register of Deeds Office on June 3, 2015.

66.     To the extent that certain items were improperly completed, those issues were the fault of K&K and/or K&K's other subcontractors.

## **AFFIRMATIVE DEFENSES**

67.     <u>Material Breach</u>.  K&K committed the initial material breach of the Parties' contract, by, *inter alia*, failing to remit all necessary payments to Progressive. As a result, Progressive was relieved of any further contractual obligations under the contract.

68.     <u>Failure to Mitigate</u>.  K&K has failed to mitigate its damages in this matter. Specifically, but not limited to, K&K failed to mitigate the damages that resulted from the intentional and unjustifiable actions of their superintendent.

69.     <u>Setoff.</u> Progressive is entitled to setoff in the amount of all sums owed to it by K&K for Progressive's work in this matter. Specifically, but not limited to, the amounts owed by Progressive, if any, should be setoff by the amounts owed by K&K under Progressive's Counterclaims.

70.     <u>Involuntary Breach and/or Unclean Hands</u>.  K&K's own acts or omissions caused or contributed to the alleged breach of contract. Specifically, but not limited to, K&K tortuously interfered with Progressive's business relationship with Mazzeo Plumbing. K&K should not be permitted to recover for any alleged loses caused by its own acts or omissions.

71.    <u>Opportunity to Cure</u>. K&K's claims against Progressive are barred, in whole or in part, because K&K failed to provide Progressive with notice and an opportunity to cure any alleged breach/default as required by Tennessee law. K&K's failure to notice constitutes a failure to meet a condition precedent.

72.    <u>Modification Through Course of Dealings</u>. K&K's claims against Progressive are barred, in whole or in part, to the extent that the terms of the Agreement allegedly breached were modified by the Parties through their course of dealings.

73.    <u>Modification Through Course of Performance</u>. K&K's claims against Progressive are barred, in whole or in part, to the extent that the terms of the Agreement allegedly breached were modified by the Parties through their course of performance.

74.    <u>Performance According to Design</u>. K&K's claims against Progressive are barred, in whole or in part, to the extent Progressive performed in accordance with the design and specifications contained in the Plans. Specifically, but not limited to, Progressive's alleged liability for "performing defective and/or deficient installation of shower water supply lines and/or shower controls" is barred as the shower installations were performed in accordance with the Project Plans supplied by K&K. Moreover, K&K has acknowledged that the Plans, with regards to the showers, were incorrect and called for non-conforming parts. Further, Progressive properly completed its work pursuant to the Agreement on the Project. To the extent that Progressive's work was improperly completed, it was due to the fault of K&K and/or separate contractors working on the Project.

75.    <u>Waiver</u>. K&K's claims against Progressive are barred, in whole or in part, to the extent that the alleged breach of the Agreement was subject to a change order that modified the terms of the Agreement.

76.     <u>Discharge</u>. K&K's claims against Progressive are barred, in whole or in part, to the extent that they have been discharged through Progressive's bankruptcy case.

77.     <u>Impossibility of Performance</u>. K&K's own acts or omissions caused or contributed to the alleged breach of contract. Specifically, but not limited to, K&K tortuously interfered with Progressive's business relationship with Mazzeo Plumbing. As a direct result of K&K's tortious interference, Mazzeo Plumbing permanently left the jobsite and K&K opted to hire Trillium to supplement the work.

**PROGRESSIVE PLUMBING, INC.'S COUNTERCLAIMS**
**AGAINST KELLOGG & KIMSEY**

Progressive Plumbing, Inc. ("Progressive"), by and through its undersigned counsel, hereby asserts the following Counterclaims against Kellogg & Kimsey, Inc. ("Plaintiff" or "K&K") (collectively with Progressive, the "Parties"), and in support thereof states as follows:

**PARTIES, JURISDICTION, AND VENUE**

78.     Progressive Plumbing, Inc. is a Florida corporation with its principal place of business located in Clermont, Florida.

79.     K&K is a Florida corporation with its principal place of business at 6077 Clark Center Avenue, Sarasota, Florida 34238

80.     K&K submitted to the jurisdiction of this Court by filing this adversary proceeding.

81.     This Court has jurisdiction over this subject matter pursuant to 28 U.S.C. §§157 and 1334(b).

82.     Venue in this Court is proper pursuant to 28 U.S.C. §§1408 and 1409.

83.     This is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. §157(b)(2)(C).

## FACTUAL AVERMENTS

84.     Progressive restates and realleges the factual allegations made in Paragraphs 37 through 67 above as if fully set forth herein.

85.     All conditions precedent to the filing of this action have occurred, been waived, or would otherwise be futile.

## COUNT I – BREACH OF CONTRACT

86.     Progressive restates and realleges the factual allegations made in Paragraphs 37 through 67 above as if fully set forth herein.

87.     The Contract represents a valid and binding commitment by K&K to pay Progressive for the services it provided on the Project.

88.     Progressive satisfactorily performed all of its obligations under the Contract and all accompanying change orders.

89.     K&K has materially breached the Contract by failing to pay Progressive in full for the services performed under the Contract, including withheld retainage.

90.     As a result of K&K's material breach of the Contract, Progressive has incurred damages in an amount to be proven at trial, but no less than $303,087.31.

91.     Progressive is entitled to recover its attorneys' fees, costs, and expenses pursuant to the Contract.

WHEREFORE, Progressive respectfully requests that this Court enter judgment against the K&K (i) finding that K&K committed the initial material breach of the Contract due to its failure to remit all funds to Progressive for work completed on the Project; (ii) that awards Progressive the amount of $303,087.31, plus pre and post judgment interest; (iii) that awards

Progressive its attorneys' fees, costs, and expenses, and (iv) any further relief that this Court deems just and proper.

## COUNT II – PROMPT PAY ACT VIOLATION

92.    Progressive restates and realleges the factual allegations made in Paragraphs 37 through 67 above as if fully set forth herein.

93.    The contract under which Progressive performed its services in this matter is for an amount greater than $500,000.

94.    Progressive provided its Services under the Contract and timely submitted requests to K&K for full payment of the amounts it earned, including withheld retainage.

95.    The work on the Project giving rise to the $303,087.31 owed to Progressive is complete. Accordingly, under the terms of the Contract, payment is due to Progressive from K&K.

96.    Pursuant to the Prompt Pay Act, Tenn. Code Ann. § 66-34-101 *et seq*. (the "Prompt Pay Act"), a trust is imposed on any sums due to Progressive which have been received by K&K, and on any sums allocated for the Project which are held by K&K, and all such sums are subject to all legal and equitable remedies.

97.    Also, pursuant to the Prompt Pay Act, Progressive is entitled to injunctive relief enjoining K&K from continuing to violate the provisions of the Prompt Pay Act, and K&K is liable to Progressive for interest on all overdue amounts from the date payment was due and potentially for reasonable attorneys' fees.

98.    All overdue amounts became the property of Progressive when it performed its work on the Project.

99.     Pursuant to Tenn. Code Ann. § 66-34-602(a), Progressive notified K&K of its failure to make payment pursuant to the Prompt Pay Act and of its intent to seek the relief provided under the Prompt Pay Act. A true and correct copy of that notice is attached hereto as **Exhibit "5."**

100.    Further, upon information and belief, K&K has failed to comply with Tenn. Code Ann. § 66-34-104. Specifically, K&K, upon information and belief, has failed to establish a separate, interest-bearing, escrow account with a third party in which retained funds must be placed.

101.    Pursuant to Tenn. Code Ann. § 66-34-104(b), the prime contractor is obligated to place the retained amounts owed to Progressive in a separate, interest-bearing, escrow account with a third party. Additionally, at the time of the withholding of those retained funds, the funds automatically become the sole and separate property of the contractor to whom they are owed.

102.    Due to K&K's failure to establish a separate, interest-bearing, escrow account in which to deposit retained funds owed to Progressive, K&K is subject to a $300 penalty for each and every day that the retained funds were not deposited into the escrow account.

103.    More than ten (10) days have passed since K&K received such notice. Nevertheless, Progressive has not been paid the amounts it is owed. K&K has also not provided Progressive with adequate legal reasons for its nonpayment.

104.    K&K's refusal to pay Progressive violates the Prompt Pay Act as the funds that Ace and/or Concord paid for Progressive's services were to be held in trust for the benefit of Progressive.

105.    Additionally, upon information and belief, K&K has acted in bad faith in failing to make such payment. Accordingly, pursuant to Tenn. Code Ann. § 66-34-602(b), Progressive should be granted its reasonable attorneys' fees in connection with this action.

WHEREFORE, Progressive respectfully requests that this Court enter an order: (i) granting injunctive relief pursuant to Tenn. Code Ann. § 66-34-602(a)(3) and compelling K&K to make payment to Progressive in the amount of $303,087.31, plus interest and attorney's fees as a remedy for its continuing violation of the Prompt Pay Act; (ii) imposing a constructive trust on any sums that should be used as payment to Progressive for its work on the Project and that an appropriate order be entered securing Progressive's interest in the retained funds; (iii) imposing statutorily required penalties upon K&K for its failure to establish a separate interest-bearing escrow account and its failure to properly deposit retained funds due to Progressive in that account; and (iv) granting any such other relief as may be just and appropriate including, without limitation,  pre-judgment interest, post-judgment interest, and discretionary costs.

## COUNT III-TORTIOUS INTERFERENCE
## WITH A BUSINESS RELATIONSHIP

106.    Progressive restates and realleges the factual allegations made in Paragraphs 37 through 67 above as if fully set forth herein.

107.    Progressive, in order to perform under the terms of the Contract, hired Mazzeo Plumbing (the "Business Relationship").

108.    K&K knew of the Business Relationship between Progressive and Mazzeo Plumbing.

109.    K&K intentionally and unjustifiably interfered with the Business Relationship (the "Interference").

110.    As a result of the Interference, Progressive incurred damages in an amount to be proven at trial.

WHEREFORE, Progressive respectfully requests that this Court enter an order: (i) finding that K&K tortuously interfered with Progressive's business relationship with Mazzeo Plumbing,

(ii) that awards Progressive actual damages, and (iii) any further relief that this Court deems just and proper.

## PROGRESSIVE PLUMBING'S CROSSCLAIM AGAINST ALLIED WORLD SPECIALTY INSURANCE COMPANY

Progressive Plumbing, Inc. ("Progressive"), by and through its undersigned counsel, pursuant to Fed. R. Bankr. P. 7013 and Fed. R. Civ. P. 13, hereby asserts the following crossclaim against Allied World Specialty Insurance Company ("Allied"), and in support thereof states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Progressive Plumbing, Inc. is a Florida corporation with its principal place of business located in Clermont, Florida.

2.      Allied is a foreign corporation domiciled in Delaware with its principal place of business at 1690 New Britian Avenue, Suite 101, Farmington, CT 06032, which is authorized to, and is conducting business in the State of Florida.

3.      Allied is a co-defendant in the above-captioned case (this "Case").

4.      This Court has jurisdiction over this subject matter pursuant to 28 U.S.C. §§157 and 1334(b).

5.      Venue in this Court is proper pursuant to 28 U.S.C. §§1408 and 1409.

6.      This is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. §157(b)(2)(A).

7.      This is an action for declaratory relief pursuant to Fed. R. Bnkr. P 7001(9).

## FACTUAL AVERMENTS

8.      On March 26, 2013, Progressive and Allied, as Darwin, entered into a Subcontract Performance Bond agreement, Bond Number D00000007 (the "Bond").

9.      The Bond names Kellogg & Kimsey, Inc, Plaintiff in the above-captioned case

("K&K" or "Kellogg"), as Obligee.

10.     On December 7, 2015, Plaintiff filed a proof of claim in the amount of $813,547.94

based on an alleged breach of contract by Progressive (Claim No. 35) ("Claim No. 35-1")

11.     On July 8, 2016, this Court entered an Order approving Progressive's Disclosure

Statement and confirming its First Amended Plan of Reorganization (Doc No. 302 and 360)

(collectively the "Plan").

12.     In relevant part the Plan provides the following:

> Class 5-Allied (Plumbing, Services, and Gracious). In full satisfaction of its
> Allowed Secured Claim, Allied's Allowed Class 5 Claim shall be treated as
> follows: . . . (e) *Allied shall receive payment in full of whatever amount the Court
> determines Debtors owe to Allied on account of the claims made by Kellogg &
> Kimsey, Inc. ("Kellogg") and related to Claim No. 35-1.* Payments shall be made
> in monthly installments based on a 10 year amortization, fixed 4.5% interest rate,
> and a 6 year maturity. Debtors shall file a claims objection against the Kellogg
> claim. Payments shall commence 30 days after a final, non-appealable judgment or
> order is entered declaring the amount owed by Debtors on Claim No. 35-1. Debtors
> will receive credit and shall not pay Allied any amounts Debtors are to pay Kellogg
> due to Kellogg's Claim No. 35-1, contingent upon Kellogg giving Allied Credit for
> such receipts. If Allied settles with Kellogg prior to a final determination by the
> Court as to Debtors' liability, the bankruptcy court shall determine what amount is
> owed to Allied. (f) Debtors will provide Allied with copies of all insurance policies
> related to Kellogg and Evergreen. (g) Upon the Effective Date, Debtors shall
> release Allied of any claims accruing prior to the Effective Date, except for any and
> all claims related to Kellogg.

> Emphasis Added. (Plan at 22-24).

13.     K&K's Complaint in this Case seeks, among other amounts, damages and pre and

post-petition attorneys' fees and costs and interest.

14.     K&K's Complaint contains claims based on (i) breach of contract, and (ii) breach

of bond.

15.     The Plan does not specify whether the amounts owed to Allied in connection with Claim No. 35-1, if any, include post-petition attorneys' fees and costs and interest.

## COUNT I-DECLARATORY JUDGMENT

16.     Progressive realleges and incorporates herein the allegations contained in Paragraphs 1 through 15 as if fully set forth herein.

17.     Progressive requests that this Court determine the rights and obligations of the Progressive and Allied under the Plan as they may pertain to any amounts owed by Progressive to Allied on account of the claims made by K&K in this Case and related to Claim No. 35-1.

18.     Specifically, Progressive requests that this Court determine whether the "amount . . . Debtors owe Allied on account of the claims made by [K&K] and related to Claim No. 35-1" includes post-petition attorneys' fees and costs and interest.

WHEREFORE, Progressive respectfully requests that this Court determine whether the amount owed by Progressive to Allied, if any, on account of the claims made by K&K and related to Claim No. 35-1 include post-petition attorneys' fees and costs and interest, and for such other and further relief in favor of Progressive as this Court deems just and proper.

RESPECTFULLY SUBMITTED this 10th day of May, 2017.

/s/ Michael A. Nardella
Michael A. Nardella, Esquire
Florida Bar No. 51265
**Nardella & Nardella, PLLC**
200 South Orange Avenue, Suite 800
Orlando, Florida 32801

17

Phone: (407) 966-2680
Fax: (407) 966-2681
E-mail: mnardella@nardellalaw.com


/s/ Roman V. Hammes
Roman V. Hammes, Esq.
Florida Bar No. 87250
**Roman V. Hammes, P.L.**
1920 North Orange Avenue, Suite 100
Orlando, Florida 32804
Phone: (407) 650-0003
Email: roman@romanvhammes.com

**ATTORNEYS FOR PROGRESSIVE
PLUMBING, INC.**



## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was furnished

via electronic mail using the Court's CM/ECF system on the 10th day of May, 2017 to all parties

receiving CM/ECF service.


/s/ Michael A. Nardella
Michael A. Nardella, Esquire